ESTHER L. KLINGER *v.* HAROLD D. CAYLOR, ET AL.

[No. 1069A178. Filed March 25, 1971. Rehearing denied April 29, 1971. Transfer denied July 14, 1971.]

510

*Jerrald A. Crowell, Bowman & Crowell,* of Fort Wayne, for appellant.

*J. A. Bruggeman, Robert Thompson, Barrett, Barrett & Mc-Nagny,* of Fort Wayne, for appellees.

LOWDERMILK, J.—Plaintiff-appellant brought her action in three pleading paragraphs against defendant-appellees, which consisted of physicians, surgeons, a clinic and hospital.

The first pleading paragraph of complaint alleged that appellees Rusher, Kephart and Roe were practicing physicians and surgeons holding themselves out to be competent and skillful, and that appellees Harold D. Caylor, Truman E. Caylor, Eisamn, Dorance, and Talbert were partners doing business as the Caylor-Nickel Clinic, and Caylor-Nickel Hospital, Inc., and the Caylor-Nickel Research Foundation, Inc., operated a clinic which they held out to the public as being properly operated for clinic and hospital services.

It is further alleged that appellee Doe was employed by all three of his co-defendant appellees Caylor-Nickel. Said pleading paragraph further alleged that in January, 1964, appellant employed appellees Caylor-Nickel and appellees Rusher, Kephart and Roe to perform surgery on her; she was admitted to the clinic on January 29, 1964, and surgery consisting of a rectocele repair was performed by appellees Rusher, Kephart and Roe, with appellee Doe assisting, on January 30, 1964. While appellant was under an anesthetic, appellees Rusher, Roe and Doe placed surgical padding in appellant's body, which they lost and failed to remove and failed to inform appellant of its presence. Appellant remained in the hospital under the care of said doctors and other employees of the clinic until February 11, 1964. Appellant failed to regain her health and suffered from debility, bowel stoppage, bloating, hypertension and intense physical and mental pain and suffering, because of the surgical padding which remained in her body. On November 28, 1964, appellant passed the padding

through her rectum, resulting in a partial remission of symptoms, but a variety of infections were caused, requiring medical treatment and medication and her health was permanently impaired.

The complaint charges further that appellees Rusher, Kephart, Roe and Doe were negligent in failing to remove the padding after the surgery, in failing to inform appellant of its presence and failing to remove it at all times subsequent to the operation.

Pleading Paragraph II contains the same allegations of pleading Paragraph I, but further alleges that appellees Rusher, Kephart, Roe and Doe were employees of appellees Caylor-Nickel at the time and further alleges appellees Caylor-Nickel were negligent in failing to provide and implement operating room procedures which would have prevented the leaving of surgical padding in appellant. It further alleged that said appellees were negligent in employing and retaining negligent personnel and in failing to properly supervise and control the actions of its employees.

Pleading Paragraph III contains the same allegations as pleading Paragraph I, but further asserts that the specific operating procedures and relationship of the appellees is not known to appellant, but are peculiarly within the knowledge of appellees, and that the padding and operating procedures were in the exclusive management and control of appellees, and the padding would not have been left in appellant's body without negligence on the part of appellees.

Appellees filed a motion for summary judgment, together with the affidavit of appellee Rusher, filed in support thereof, alleging there was no genuine issue as to any material fact.

The affidavit of appellee Rusher was to the effect that he was a qualified expert in the field of medicine and had special training in the fields of surgery, gynecology and obstetrics; that he performed the surgery on appellant and her bowel was not packed in any manner; that none of the appellees

failed to remove surgical padding from appellant's body; and that it is scientifically and medically impossible for appellant to have received her alleged injuries as the result of the operation he performed.

Appellant filed her affidavit in opposition to appellees' motion, which averred that appellees performed the surgery on her as alleged in her complaint and during the course of surgery, surgical padding was placed in her rectum and not removed; that the padding created a block in appellant's digestive tract for an extended period of time; that the surgical padding was, at the time of the filing of the affidavit, in the possession of defense attorneys, it having been turned over to them with the understanding that laboratory tests were to be run to determine its composition, but tests had not at that time been made and the results not furnished to appellant as agreed.

Appellant further deposed that in the time available before the hearing on the motion appellant had been unable to obtain medical affidavits to refute appellees' medical allegations because local physicians were unwilling to involve themselves in disputes involving a local medical group.

Thereafter, arguments were had on the motion for summary judgment and the court sustained said motion and entered judgment for appellees.

The judgment, as amended, is in the words and figures as follows, to-wit:

"Plaintiff's complaint alleges that plaintiff suffered damages in the sum of $25,000.00 as a result of a bowel obstruction resulting from surgical padding negligently left in plaintiff's body during surgery performed on or about January 29, 1964, by defendant.

"Defendants' motion for summary judgment, filed March 18, 1969, is accompanied by an affidavit of the medical doctor who performed the surgery, denying he or any of the defendants negligently lost, left, or failed to remove any surgical padding or material in the body of plaintiff and alleging that it is scientifically and medically impossible for plaintiff to have received the injury and condition of which

she complains as a result of the operation performed by him. "The Indiana statute concerning summary judgments, Burns' Indiana Statutes Section 2-2524, provides in subsection (e) thereof as follows:

'Form of Affidavits—Further Testimony—Defense Required. Supporting and opposing affidavits shall set forth such facts as would be admissible in evidence and shall show affirmatively that the affiant is competent to testify to the matters stated thereon. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or by further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.'

"As it applies to this case it seems clear that this statute requires, in response to defendants' motions and affidavit, the submission of affidavits of a medical doctor or medical expert to the effect that a bowel obstruction developed in plaintiff subsequent to this surgery; that said obstruction resulted from surgical padding negligently left in her body at the time of the surgery and that she suffered physical harm as a result thereof, in certain specified ways.

"Plaintiff's affidavit in opposition to defendants' motion for summary judgment has no such affidavits attached to it, but only the affidavit of plaintiff who is not shown to be a medical doctor or medical expert, repeating the allegations of plaintiff's complaint.

"Oral argument was heard on the motion and plaintiff's counter affidavit on April 28, 1969. Plaintiff did not request additional time for depositions or further discovery as might have been allowed pursuant to sub-section (f) of Indiana Statutes Section 2-2524. Plaintiff's affidavit fails to establish a justiciable issue and is therefore inadequate to establish a genuine issue for trial against defendants' motion; therefore defendants' motion for summary judgment must be granted.

"Finding and judgment for defendants and against plaintiff. Judgment against plaintiff for costs."

Appellant timely filed her transcript and assignment of errors with the Clerk of this court, which assignment of errors is that the court erred in sustaining defendants' motion for summary judgment and granting judgment for the defendants and against the plaintiff.

Appellant, in her argument, insists that the court erred in granting the summary judgment and vigorously contends that there was a genuine triable issue of fact and that summary judgment should therefore not have been granted.

Appellant insists that the first two Paragraphs contain specific allegations of negligence; that the third Paragraph of complaint was based on *res ipsa loquitur*. Appellant points out that the amended judgment of the court does not distinguish between the three Paragraphs of the complaint and urges that there are three separate issues raised by the court's ruling.

This court will not treat the three separate issues raised by the court's ruling individually and separately, but for the purpose of this opinion will combine them.

The trial judge, in his amended judgment, as heretofore set out in this opinion, has said, among other things, that the statute requires, in response to defendants' motion and affidavit, the submission of affidavits of a medical doctor or medical expert to the effect that:

"* * * a bowel obstruction developed in plaintiff subsequent to this surgery; that said obstruction resulted from surgical padding negligently left in her body at the time of the surgery and that she suffered physical harm as a result thereof, in certain specified ways.

"Plaintiff's affidavit in opposition to defendants' motion for summary judgment has no such affidavits attached to it, but only the affidavit of plaintiff who is not shown to be a medical doctor or medical expert, repeating the allegations of plaintiff's complaint."

This judgment presents squarely to this court the question as to whether or not in a malpractice case a plaintiff who alleges malpractice of her physician or surgeon can avoid a

summary judgment against her by the trial court in each instance where there is no competent expert medical man who can or will give an affidavit rebutting the affidavit of denial of any negligence or malpractice made by the physician or surgeon sued.

In other words, in the case before us, the trial court has held that the expert opinion of a physician or surgeon is conclusive in spite of contrary evidence of a *lay* witness.

Let us now look to appellees' contention that the affidavit of Dr. Rusher, as an expert, is entitled to full recognition of its truth and the facts set forth therein, when there is no counter-affidavit filed by a medical expert.

We are of the opinion that the medical expert's evidence is subject to the same rules and should be weighed the same as other evidence adduced in a trial and does not preclude the weighing by the court or jury of non-expert evidence on the matter at issue.

In *Funk* v. *Bonham* (1932), 204 Ind. 170, 183 N. E. 2d 312, which was an action by appellee-plaintiff against appellant-defendant wherein appellee sought to recover damages from appellant on account of injuries sustained while under the care and treatment of the appellant, our Supreme Court discussed the use of expert witnesses in medical malpractice cases.

In *Funk* the appellant presented the argument that the complaint of negligence against him was not given by expert witnesses, such as doctors and surgeons, and that the evidence given by lay witnesses or non-expert witnesses is incompetent to prove negligence of the surgeon-appellant. The court, in discussing this argument of appellant, said:

"The testimony of experts is used most frequently by the defendants in malpractice cases to prove no lack of duty or skill. This is illustrated by the principle of law stated in the cited case of *Blackburn* v. *Baker, supra,* which would sustain the verdict upon the evidence in this case, to the effect that, the mere presence of the sponge in appellee's abdomen, after the operation under consideration, standing

by itself, suggests that proper surgical care had not been used; and that, under this state of facts shown by such evidence, the appellant here is required, to successfully meet the appellee's evidence to sustain the complaint, to offer proof in explanation of his action. We believe that, in the case at bar, the necessity for expert testimony was a matter of defense, *and that the rule of res ipsa loquitur applies,* which put upon the appellant the burden of proving *to the satisfaction of the jury,* in order to present a complete defense, that he was not negligent in leaving the sponge in appellee's abdomen."

The court further stated:

*"The decision of the issue here under such a state of facts may not rest entirely upon expert testimony, as appellant's proposition requires, which would invade the province of the jury and take from it its legally assigned duty to decide that such a state of facts did, or did not, constitute negligence. The proposition presented* by appellant upon the question of evidence *would leave the matter of negligence to be decided exclusively upon the opinion of expert witnesses,* as to whether or not the surgeon, in leaving the sponge in the abdominal cavity, relied upon a custom of depending exclusively upon the count of the sponges by nurses employed and furnished by the hospital. (Our emphasis.)

"It is held that it was not incumbent upon appellee to show, by expert testimony, that appellant did not do what was proper in the performance of the operation, or that he did anything improper in the performance of the operation or the treatment thereafter, to prove negligence by the appellant." *Pinnell* v. *Kelly* (1913), 54 Ind. App. 59, 99 N. E. 772; *Walker Hosp.* v. *Pulley* (1920), 74 Ind. App. 659, 127 N. E. 559.

*McNabb* v. *Mason* (1970), 148 Ind. App. 233, 264 N. E. 2d 623, is the latest and a well reasoned opinion by Judge Sullivan of this court on malpractice and summary judgment.

The court's reason assigned for his sustaining the motion for summary judgment being, in part, that plaintiff's affidavit in opposition to defendants' motion had no affidavits of a medical doctor or medical expert refuting the affidavit of appellee Dr. Rusher and because of this

failure appellees must prevail, is, in our opinion, contrary to law.

The trial court's amended finding and judgment being erroneous and contrary to law this cause is now hereby reversed.

It would be possible for us to remand this cause for a new trial at this point without further discussion of the issues and the law which have been raised by the parties. However, since this cause must be remanded for trial and the additional issues and questions of law raised in the briefs of the parties must necessarily be passed on, it would be unfair to the parties and the trial court and we would be remiss in our duties if we failed to discuss the essential issues and the pertinent law which have been raised on the merits of this cause.

Generally speaking, a person who undergoes surgery has complete confidence in the surgeon and does not think of malpractice or litigation. If patients are confronted with a holding such as in this case, then it would be necessary for a person operated under a general anesthetic to have a competent physician present to make the determination as to whether or not the original operating surgeon was guilty of any malpractice. Such a thing is untenable and unreasonable. No surgeon would watch another and the surgeon being watched would refuse to operate under such circumstances, in our opinion.

In the case at bar appellant's affidavit stated that she could not secure physicians or surgeons to make an affidavit as to any alleged malpractice and therefore her affidavit is the only one filed.

Appellees insist that appellant's affidavit was based solely on information and belief and is not sufficient to constitute a showing in opposition to appellees' motion for summary judgment under Burns' Ind. Stat., § 2-2524(e).

Said § 2-2524(e) provides, in part, as follows:

"(e) Form of Affdavits—Further Testimony—Defense Required. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence and shall show affirmatively that

the affiant is competent to testify to the matters stated therein. * * *"

Appellees contend that appellees' affidavit for summary judgment was based on personal knowledge and showed that in the course of the operation (1) no abdominal surgery was done, (2) the plaintiff's bowel was neither cut nor packed in any manner, (3) neither affiant nor any of the defendants carelessly lost, left or failed to remove any surgical padding or material in plaintiff's body, and (4) it is scientifically and medically impossible for the plaintiff to have received the injury complained of as a result of the operation performed.

Appellees further contend that the only showing in opposition to the above charges of appellees' affidavit are that appellant's own affidavit was to the effect that surgical padding had been placed in her bowel in connection with the operation performed by Dr. Rusher and was not removed.

Appellees vigorously contend that appellant-plaintiff's affidavit is *not based on plaintiff's knowledge, but merely on her information and belief.* It is further urged that the court take judicial notice of the fact that during said operation the plaintiff was under general anesthetic and was incapable of having personal knowledge of the procedures employed, or the things done. Appellees further contend that the very most that plaintiff is competent to testify to is that she had an operation and that some ten months later something passed through her rectum.

Appellees further vigorously contend that the summary judgment should be affirmed in this case and cite as authority *Markwell* v. *General Tire & Rubber Company* (1968), 142 Ind. App. 188, 233 N. E. 2d 676, wherein the court said, at page 678:

"Under Burns' § 2-2524(e), it is provided that,
" 'When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this

rule, *must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.'* (Emphasis supplied.)

"Appellee filed three affidavits made by experts, and set forth specific facts therein showing the method of the tests made by the experts, and showing as a result of the tests that no defect existed in the tire in question.

"Appellant, on the other hand, merely stated in his affidavit that the tire was defective.

"As far as we are able to determine, he has done nothing more than reiterate the allegations of his pleadings, in that he has wholly failed to state specific facts showing a defect of some nature.

"The other two affidavits filed by appellant merely state that the tire was in a deflated condition immediately after the accident in question occurred. These affidavits are not sufficient to comply with the summary judgment statute, namely, that no specific facts were set forth therein showing a genuine issue for trial.

\* \* \*

"We are of the opinion that appellant has wholly failed to comply with the requirements of Burns' § 2-2524 (e), and as a result we are of the opinion that the trial court's judgment must be affirmed."

Appellees further contend in the case at bar that a logical and practical basis for the statutory requirement of an affidavit on personal knowledge is to take care of a case like this. Their contention on this point is that appellant's action is based solely on an alleged negligent act of leaving surgical padding in her body (of necessity, in her bowel, since the material is alleged to have exited through her rectum), during an operation. They further contend that the affidavit of Dr. Rusher (appellee) clearly establishes that the operation performed consisted of procedures in which no abdominal surgery was performed and plaintiff's bowel was not cut or packed in any manner, and further, the doctor pointed out in such a procedure it is scientifically and medically impossible for plaintiff to have received the bowel stoppage of which she complains. They further contend that the affidavit of appellant

showing she suffered a bowel stoppage and almost a year following the operation complained of, passed the surgical padding through her rectum, which appeared to ease the stoppage, is not sufficient to indicate, let alone establish, a genuine issue of material fact on the essential question of whether any material was left in her body at the time of, or in connection with the operation performed by Dr. Rusher.

On page 15 of appellees' brief, they state:

"* * * If, in fact, any material did pass from plaintiff's rectum a year following the surgery it could have been deposited there as a result of any one of a number of causes, at any time following the operation. When these facts are coupled with the testimony of Dr. Rusher, that *no* material was even placed in plaintiff's colon during the operation, it becomes apparent that plaintiff has wholly failed to establish a genuine issue of material fact regarding the question of whether surgical padding or material was left or even placed in plaintiff's bowel in connection with the operation."

We cannot agree with the contentions argued by appellees. Appellant was anesthetized and had a complete hysterectomy and a rectocele operation. Despite the fact that Dr. Rusher's affidavit was that no material was ever placed in her colon during the operation, the appellant has so charged in her complaint and in her affidavit. Her affidavit further shows that some ten months after the operation the surgical padding was emitted through her rectum. Certainly, the doctor's affidavit that the material could have been deposited in plaintiff's rectum as a result of one on a number of causes at any time following the operation is conjecture on his part.

Appellant alleges that in the operation the surgical padding was inserted in her rectum and was not removed by the doctor. This, of course, took place while she was anesthetized. Appellant, before being anesthetized, had knowledge of the condition of her bowels. After the surgery she commenced having rectal trouble; she suffered from debility, stoppage of the bowels, bloating, hypertension, and intense mental and physical pain and suffering. After the surgery and while sustaining

the said pain and suffering she returned to Dr. Rusher for treatment for the same and was treated by him.

It is within appellant's knowledge to know whether her treatment by Dr. Rusher, after the surgery, entailed the opening of her stomach or bowel or the insertion of surgical padding in her rectum. The appellant, knowing the condition of her bowels before the operation and knowing that she was operated while completely anesthetized and thereafter knowing of the discomfort and pain which she suffered and which pain and suffering was, in part, relieved by the passing of the surgical padding through her rectum; and knowing, further, that following the operation she had no further treatment wherein any surgical padding was placed in the intestinal tract, has, in our opinion, sufficient personal knowledge that she can make the affidavit as prescribed in Burns' § 2-2524(e). No one in the whole world knows better of her condition before the operation and her condition after the operation up to and including the time she passed the surgical padding than the appellant herself.

For this court to hold that a person, while anesthetized, could not make an affidavit of that person's own knowledge as to her condition before and after the operation and as to any foreign objects which were removed from her body afterward so that her affidavit would not be considered under Burns' § 2-2524(e) would be for this court to cloak physicians and surgeons with a blanket of immunity for any malpractice they may commit on their patients while the patient is anesthetized. We cannot believe that our General Assembly intended such in the enactment of the statute and we are of the further opinion that appellant's affidavit in the case at bar was sufficient and within the scope of the statute and should have been considered by the trial court in his determining if there was a triable issue of a material fact.

Medical malpractice suits are often extremely difficult to prove by a plaintiff who has allegedly sustained injuries. The reason for this could very well be twofold. For one, the plain-

tiff is usually unconscious at the time of the alleged negligent conduct and, therefore, has no knowledge as to what went on or took place by the defendants. Secondly, doctors in the medical profession seem to have great reservation in testifying against fellow doctors. This trait of human behavior may be understandable; however, it is most devastating to a plaintiff who has allegedly sustained an injury from the malpractice of a physician or surgeon and who must produce expert testimony and witnesses or else invariably be defeated on a motion for summary judgment, as was the case at bar.

The plaintiff, in the third paragraph of her complaint, pleaded the doctrine of *res ipsa loquitur*. This doctrine has for many, many years been recognized and is normally applied in medical malpractice suits.

*Ball Memorial Hospital* v. *Freeman* (1963), 245 Ind. 71, 77, 196 N. E. 2d 274, was an action brought by a patient against the appellant hospital for injuries sustained by the patient as the result of an application to the patient of a solution prepared by the hospital from component parts purchased from a drug company by the hospital according to the hospital's own formula. The solution, after being prepared, was then stored and dispensed by the hospital. The hospital's evidence negated any fault with the components, *leaving only the inference of negligence on behalf of the hospital.* The court held that from the evidence appellant was negligent with regard to the particular system it maintained for the preparation, storage and dispensing of the solution. The surgeon administering the solution to appellee did nothing to change its character and was merely a conduit to assure that it reached appellee in the place and manner intended.

The court further held that appellant had complete control over the solution until it was given to appellee in the manner intended by appellant and that the uncontradicted evidence negates any evidence that the injuries were caused by someone else. This leaves but one inference, "that appellant was guilty of negligence."

Our Supreme Court further held that it was committed to the application of *res ipsa loquitur* in cases such as the case at bar, as being evidenced from its recent opinion in *New York, Chi., etc., R.R. Co.* v. *Henderson* (1958), 237 Ind. 456, 146 N. E. 2d 531, 147 N. E. 2d 237, in an opinion by Judge Arterburn, concurred in by Judges Achor and Landis, with a further concurring opinion by Judge Emmert.

The Supreme Court and this court have said many times before that the purpose of a summary judgment is to allow the trial court to determine, without litigation, the existence of genuine material issues of fact and a finding in favor of a moving party is a finding that he is entitled to judgment as a matter of law. However, it is the burden of the party moving for a summary judgment to show the lack of a genuine issue of fact. It has been held that if there is *any* doubt as to the existence of a factual issue, then the motion must be resolved in favor of the non-mover. *Wozniczka* v. *McKean* (1969), 144 Ind. App. 471, 245 N. E. 2d 215; *Newcomb* v. *Cassidy* (1969), 144 Ind. App. 315, 245 N. E. 2d 846.

In *Walsh* v. *Fulton County Farm Bureau Co-op Assoc.* (1969), 146 Ind. App. 42, 252 N. E. 2d 609 (Tr. denied June 2, 1970), this court, in discussing a hearing on a motion for summary judgment, stated that such hearing is not a trial, but the case should be allowed to proceed to trial in the usual way if there is a material fact to be tried. The court further set out the function of the trial court in passing on a motion for summary judgment as follows:

"At the hearing, it is not the function of the trial court to decide which of conflicting inferences is to be drawn from the facts before the court, or to decide what conclusion shall be reached therefrom where reasonable men might differ. The court is not to pass upon the credibility of the witnesses or to determine the preponderance of the evidence. Rather, the evidence, pleadings and inferences must be viewed in the light most favorable to the

party against whom summary judgment is sought. If there is any question as to the credibility of evidence or its weight, summary judgment should not be granted. *Wozniczka* v. *McKean* (1969), 144 Ind. App. 471, 245 N. E. 2d 215; *Verplank* v. *Commercial Bank of Crown Point, supra; Central Realty, Inc.* v. *Hillman's Equipment, Inc.* (1969), 253 Ind. 481, 246 N. E. 2d 383; *Newcomb* v. *Cassidy* (1969), 144 Ind. App. 315, 245 N. E. 2d 846; *Mayhew* v. *Deister* (1969), 144 Ind. App. 111, 244 N. E. 2d 448."

Judge Sharp of this court gave a very informative and learned discussion of summary judgment in the case of *Mayhew* v. *Deister* (1969), 144 Ind. App. 111, 244 N. E. 2d 448, 452 (Tr. denied June 4, 1969), as follows:

" 'Since the moving party must show that he is entitled to prevail as a matter of law while the opposing party need show only that a genuine controversy as to the facts exists, the provisions of Rule 56(e) are enforced more strictly against the movant than the opposing party.' [Rule 56(e) is identical to Section 2-2524(e), Burns' Indiana Statutes Annotated (1968 Replacement)]

" 'Summary judgment is a lethal weapon, and courts must be mindful of its aims and targets and beware of overkill in its use.' *Brunswick Corp* v. *Vineberg*, 370 F. 2d 605 (5th Cir. 1967).

"If there is a question of state of mind, credibility of witnesses, or weight of testimony, summary judgment should be denied. *Alabama Great Southern Railroad Co.* v. *Louisville and Nashville Railroad Co.*, 224 F. 2d 1, 50 A. L. R. 2d 1302 (5th Cir. 1955); *Subin* v. *Goldsmith*, 224 F. 2d 753 (2d Cir. 1955); *Alvado* v. *General Motors Corp.*, 229 F. 2d 408 (2d Cir. 1956); Barron and Holtzoff, Vol. 3, Sec. 1234 at page 134."

The case of *Doe* v. *Barnett* (1969), 145 Ind. App. 542, 251 N. E. 2d 688, is cited here as bearing out the rule enunciated by the Supreme Court and this court and, more especially, as to the granting of summary judgments in negligence cases. The court said:

"*    *    *

"8. *Summary judgment is seldomly appropriate in negligence cases where the standard of the reasonable man must*

*be applied to conflicting evidence.* Even in cases of undisputed facts it is usually for the trier of fact to determine whether the conduct in question met the standard of the reasonable man.

"9. If there is a question as to the state of mind, credibility of witnesses or weight of testimony summary judgment should be denied.

"10. Even where the trial judge may surmise that the proponent of a motion for summary judgment is likely to prevail at the trial, this is not a sufficient basis for refusing the respondent to a motion for summary judgment his day in court with respect to any genuine issue as to a material fact.

"'* * * 'It is only when the supporting affidavits clearly establish that there is no controversy as to any material fact that summary judgment can be granted. [Citing cases.]

" 'Summary judgment cannot be granted, however, when it is necessary to weigh the evidence contained in the supporting affidavits, draw conclusions of fact from that evidence, and thereby determine a preponderance of the evidence. In ruling on motions for summary judgment, the court may not decide questions of fact, but is limited to the sole determination of whether or not a factual controversy exists. In short, summary judgment is not a procedure for trying facts and determining the preponderance of the evidence. Rather, it is a procedure for applying the law to the facts when no factual controversy exists.' " (Our emphasis.)

It was the duty of the trial judge to determine whether, under the above rules, appellee Rusher's motion and affidavit for summary judgment, together with the affidavit of the appellant filed thereto, raised a triable issue of material fact; it is now the duty of this court in the case at bar to determine if the court erred in granting appellees' motion for summary judgment.

First, it is the obligation of the court to determine if a party plaintiff is entitled to a day in court. Secondly, if the party plaintiff is entitled to a day in court it is the court's duty to see that that day in court is awarded to the plaintiff, irrespective of the court's feelings, and thirdly, the press of business on the court, the expense of the litigation and the

time consumed is not to be considered and must always come last.

In *Houston* v. *First Federal Savings & L. Ass'n of Gary* (1969), 144 Ind. App. 315, 246 N. E. 2d 199, 205, this court, in holding that there was a triable issue of fact presented to the trial court, said:

> "* * * that the case should have been submitted to the court for trial on its merits, even though the court, in its wisdom, probably was of the opinion that the same result was reached in the granting of a summary judgment that would have been reached had he tried the case on its merits. *Pierce* v. *Ford Motor Co., supra.*"

We are not unmindful that Burns' Stat. § 2-2524(e) provides that in a motion for summary judgment the affidavit shall be made from actual knowledge of the affiant and not on hearsay or information and belief. Neither are we unmindful that said statute was duly enacted by the General Assembly of the State of Indiana with the intention to relieve the courts somewhat from their press of business, having a statutory method whereby they could dispose of matters which might be frivolous and in which there was no issue of material fact to pass upon. Neither are we unmindful of the further fact that the General Assembly, being composed of reasonable men and women, never intended to deprive residents of our state from their day in court to which they were legally entitled. Neither, in our opinion, do we believe that the summary judgment act was duly enacted by our General Assembly for the purpose of ridding the court's trial docket of cases which may not have received proper attention from attorneys and were "growing old".

We are of the opinion that the words in the statute which provided for personal knowledge of the affiant did not and do not now mean that a person who may be the victim of malpractice of a surgeon during an operation and while anesthetized is precluded from making an affidavit on her personal knowledge.

We reiterate that, in our opinion, our General Assembly did not intend by the enactment of this statute to exclude physicians and surgeons from negligent acts which might constitute malpractice. Such not being the legislative intent, this court now holds that physicians and surgeons were not excluded from their own negligent acts which occurred while their patient was anesthetized and could not have any personal knowledge of the surgeon's acts. In our opinion, the affidavit of the patient consisting of facts of her physical condition immediately prior to and immediately after the operation, together with any unusual malfunction of the body and the passing of surgical padding through her rectum ten months after the operation and during such ten months she had endured sickness and pain, as above set out in this opinion, was within her personal knowledge and should have been considered by the court.

This court is of the opinion that the issues in this cause pertaining to appellant's alleged acts of negligence of the appellees and the affidavits of the parties filed thereto present a triable issue of material fact and that the trial court committed reversible error in holding to the contrary and in granting summary judgment to the appellees.

It is, therefore, decreed by this court that this cause be, and the same hereby is, remanded to the trial court for trial on the issues.

Sullivan, P.J., Buchanan and Robertson, JJ., concur.

NOTE.—Reported in 267 N. E. 2d 848.